

Entered on Docket
November 10, 2008
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: November 07, 2008

_____
**THOMAS E. CARLSON**
**U.S. Bankruptcy Judge**
_____

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re ) Case No. 08-31522 TEC
)
ICE OASIS, LLC, a Nevada limited ) Chapter 11
liability company, )
)
)
)
Debtor. )
_____)

**MEMORANDUM RE MOTION TO DISMISS CHAPTER 11 CASE**

On November 3, 2008, the court held a hearing on the motion of Borel Private Bank and Trust Company (Borel) to dismiss this chapter 11 case. Todd C. Toral appeared for Borel. M. David Minnick appeared for Wells Fargo Bank, N.A. (Wells Fargo), which joined in Borel's motion. Terrell S. Root appeared for Debtor. Minnie Loo appeared for the United States Trustee. Upon due consideration, and for the reasons stated below, the court grants the motion to dismiss.

MEMORANDUM RE MOTION TO
DISMISS CHAPTER 11 CASE

-1-

FACTS

Debtor's sole asset is a parcel of improved property in Redwood City, California. Debtor leased the property to a related entity, Ice Oasis, Inc. (Lessee). Lessee operates an ice rink on the premises. The Property is encumbered by a first deed of trust in favor of Wells Fargo and a second deed of trust in favor of Borel.

After Debtor fell behind in payments to Wells Fargo and Borel, Borel scheduled a foreclosure sale for August 20, 2008. Debtor filed a petition under chapter 11 on August 18, 2008 to stop that foreclosure sale.

Debtor is a Nevada limited liability company in which Kenneth Yackel and John Baldwin each own a 50-percent interest.[1] The Operating Agreement for Debtor provides that the LLC "shall be managed exclusively by all of its members" and that

> each member shall vote on any matter submitted to the membership for approval in proportion to the member's percentage interest in [the] LLC

(Baldwin Decl., ¶¶ II(3), (5)). The Operating Agreement does not say what matters need to be submitted to the membership for approval. The Operating Agreement provides that it is governed by Nevada state law. (Id., ¶IX).

---

[1] The Operating Agreement is internally inconsistent. It provides that a member's percentage interest in Debtor is computed as the total of a member's capital account divided by the total of all capital accounts of all members. Although each member contributed an equal amount of capital, the Operating Agreement provides that Mr. Baldwin owns a 57% interest in the LLC, and that Mr. Yackel owns a 43% interest. (Decl. of John Baldwin In Support of Motion to Dismiss ("Baldwin Decl."), Exh. A (Operating Agreement), ¶¶ II(4), IV(1). The court need not resolve this inconsistency because it is immaterial to the issue of whether Debtor had authority to file the chapter 11 petition.

**MEMORANDUM RE MOTION TO DISMISS CHAPTER 11 CASE**

-2-

Debtor's voluntary petition was signed on Debtor's behalf by Mr. Yackel, who states under penalty of perjury on the signature page of the petition that he has been authorized to file the petition on Debtor's behalf. There is no document attached to the voluntary petition evidencing this authority. Mr. Baldwin states that Mr. Yackel did not consult with him before filing the petition, and that Mr. Baldwin did not consent to the filing (Baldwin Decl., ¶ 3). On September 9, 2008, Mr. Yackel e-mailed Mr. Baldwin asking him whether he concurred with the Ice Oasis bankruptcy (Exh. 1 to Debtor's Opp. to Motion to Dismiss). Mr. Baldwin responded that Mr. Yackel became solely responsible for running the company since the time Mr. Baldwin left in 2006. Id.

DISCUSSION

A. DISMISSAL FOR CAUSE UNDER SECTION 1112(b)

Under section 1112 of the Bankruptcy Code, a case may be dismissed for "cause." Section 1112(b)(4) provides that "cause" includes:

> (E) failure to comply with an order of the court;
> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter.

Once cause is established, the case should be converted or dismissed unless the Debtor shows *either*: (1) "a reasonable justification" for the act or omission that constitutes cause and a likelihood that it will confirm a plan within a reasonable period of time; or (2) that conversion or dismissal is not in the best interest of both creditors and the estate. §§ 1112(b)(1), (2).

In the present case, Debtor failed to file the monthly operating reports required under Bankruptcy Local Rule 2015-2. Debtor also failed to file a status conference report that the

**MEMORANDUM RE MOTION TO
DISMISS CHAPTER 11 CASE**

court ordered Debtor to file by October 14, 2008. (See Amended Chapter 11 Status Conference Order, filed on September 30, 2008). At the hearing, the court asked Debtor's counsel why the monthly operating reports had not been filed, and Debtor offered no excuse or explanation.

These derelictions could be characterized as merely technical, and this court would not dismiss on the basis of such failures, if Debtor was able to show it could likely confirm a plan in a reasonable period of time, or that dismissal was not in the best interest of both creditors and the estate. The following circumstances suggest that Debtor has not met that burden, and that the balance of equities weighs in favor of dismissal.

First, it appears that Debtor does not have sufficient income to confirm a plan under which it retains the Property. Debtor asserts that the first and second deeds of trust are fully secured. Thus, Debtor can confirm a plan under which it retains the Property only by paying those claims in full. 11 U.S.C. § 1129(b)(2)(A). Because Debtor had not filed monthly operating reports, the court inquired at the hearing as to the amount of income that Debtor received from Lessee. Debtor responded that it was entitled to receive rent of $20,000 per month. In the Statement of Financial Affairs, Debtor listed no income for 2008. The combined monthly payments on the two deeds of trust are approximately $37,000. Real property taxes are approximately $4,000 per month.[2]

---

[2] Without monthly operating reports, the court can only estimate real property taxes. At one percent of the appraised value of $4.5 million (the limit under California Proposition 13), taxes would be approximately $4,000 per month.

**MEMORANDUM RE MOTION TO DISMISS CHAPTER 11 CASE**

-4-
Case: 08-31522  Doc# 28  Filed: 11/07/08  Entered: 11/10/08 16:12:00  Page 4 of 9

Debtor has not made any post-petition payments on the first or second deeds of trust.  Thus, to the extent that Debtor has received rental income from Lessee, it has not paid that income to the secured creditors.  Both the first and second deeds of trust contain clauses that provide the lenders a lien on rents from the Property.

Debtor suggested at the hearing that it would attempt to refinance the Property to lower its debt service.  It does not appear that refinancing on any terms realistically available would lower debt service sufficiently to render a plan feasible.  If Debtor were able to obtain a six-percent 15-year loan, very favorable terms for a borrower in Debtor's circumstances, monthly debt service would be approximately $38,000 per month.

Debtor also stated at the hearing that the Lessee hoped to increase its operating income to exceed $40,000 per month within the next six to nine months.  Presumably, Lessee, which is also owned by Yackel and Baldwin, would increase rental payments to Debtor.  This projected increase is entirely speculative and, even if attained, offers little cushion over debt service and taxes.

Second, it appears that Debtor does not have any significant equity in the Property. Borel submitted the declaration of an appraiser stating that as of March 10, 2008 the as-is going-concern value of the Property was $4.76 million, and the as-is value was $4.5 million.  Each of these valuations assumed a marketing period of twelve months.  The current balance of secured debt against the Property is $4.53 million.  In the current economic climate, it is not likely that the value of the Property has increased since the date of the appraisal.  Debtor did not offer any evidence to rebut

this valuation, nor did it seek additional time to obtain such evidence. Debtor and Yackel have offered wildly varying estimates of the value of the Property. In its schedules, Debtor listed the value as $8.7 million. At the hearing, Debtor's counsel stated the value was more than five million. In his personal chapter 7 case filed in July 2008, Yackel listed his interest in Debtor as having no value, indicating that Debtor has no equity in the Property.

Third, dismissal of the case would have little effect on third-party unsecured creditors. Debtor's schedules list unsecured claims totaling $84,727. Debtor's counsel stated at the hearing, however, that almost all of these debts are not owed by the Debtor, but are instead owed by the Lessee. The schedules list unpaid real property taxes totaling $68,695. Such taxes will be paid in full even if the case is dismissed, as they constitute a lien with priority over the deeds of trust.

In light of the above, the equities weigh in favor of creditors and dismissal of the case. Debtor is not playing by the rules of the chapter 11 process in failing to file monthly operating reports and a status conference statement. The economic information that Debtor provided at the hearing suggests that successful reorganization is highly questionable. The evidence before the court suggests that Debtor has no equity to lose, and that there are no third-party unsecured creditors who might be harmed by dismissal.

B. AUTHORITY TO FILE PETITION

Whether a business entity is authorized to file a bankruptcy petition is a matter of state law. In re Avalon Hotel Partners, LLC, 302 B.R. 377, 380 (Bankr. D. Ore. 2003). Debtor is a Nevada

**MEMORANDUM RE MOTION TO DISMISS CHAPTER 11 CASE**

limited liability company, and its decision to file bankruptcy is governed by Nevada state law. See id.

The Operating Agreement provides that Debtor shall be managed exclusively by all of its members, and that "all decisions" must be approved by members holding a majority of the outstanding interests. The Operating Agreement and the Nevada state statute governing LLCs are silent as to whether the filing of a bankruptcy is a "decision" that must be approved by a majority vote. Nev. Rev. Stat. § 86 et. seq. Because the decision to place a business in bankruptcy is a decision that is not in the ordinary course of business, it appears that such a decision is one that would require a majority vote of the members under the Operating Agreement. There having been only fifty percent of the members in favor of filing the bankruptcy, it appears that the filing was not authorized. Avalon Hotel Partners, 302 B.R. at 381.

Mr. Yackel introduces the postpetition e-mail as evidence that he had authority to file the petition on behalf of Debtor because, since 2006, he had permission from Mr. Baldwin to run the LLC all by himself.[3] It is doubtful that this e-mail constitutes the unanimous vote or the unanimous written consent of the persons who

---

[3] The e-mail from Yackel to Baldwin written on September 9, 2008 provides: "John, we need to get together on the bankruptcy. Do you concur with the Ice Oasis bankruptcy filing? If you have any questions please call Jim S. at 408-206-2908." Mr. Baldwin e-mailed the following reply on September 10, 2008:

> This is to confirm our past conversation–-that when I left the company over 2 1/2 years ago, you would solely run the company and that I have no input or knowledge as to what direction and changes you have made with the business. The understanding was that you would look out for the best interest of Ice Oasis along with the reorganization of the company in which you would remove me [sic] for the any and all guarantees for my shares of the company.

**MEMORANDUM RE MOTION TO DISMISS CHAPTER 11 CASE**

are members at the time of the amendment required to amend the
Operating Agreement under Nev. Rev. Stat. § 86.286 (1).

Nor does the e-mail exchange evidence a majority vote in favor of the bankruptcy.  First, the e-mail exchange occurred postpetition, and therefore cannot serve as a prepetition informal vote by Mr. Baldwin in favor of placing Debtor in bankruptcy.  Second, interpreting the e-mail exchange as ratification of the bankruptcy filing would directly contract Mr. Baldwin's sworn declaration stating that he did not consent to the bankruptcy.

Whether or not the petition was authorized, however, the case should be dismissed for cause for the reasons set forth in Part A, above.

**\*\*END OF MEMORANDUM\*\***

| | |
|---|---|
| 1 | <u>**Court Service List**</u> |
| 2 | |
| 3 | Terrell S. Root, Esq. |
|   | James M. Sullivan, Esq. |
| 4 | Law Offices of James M. Sullivan |
|   | 225 North Santa Cruz Avenue |
| 5 | Los Gatos, CA 95030 |
| 6 | Todd C. Toral, Esq. |
|   | Nixon Peabody LLP |
| 7 | One Embarcadero Center, 18th Floor |
|   | San Francisco, CA  94111-3600 |
| 8 | |
|   | M. David Minnick, Esq. |
| 9 | Pillsbury Winthrop Shaw Pittman |
|   | 50 Fremont Street |
| 10 | San Francisco, CA 94105-2228 |
| 11 | Minnie Loo, Esq. |
|   | Office of the U.S. Trustee |
| 12 | 235 Pine Street, 7th Floor |
|   | San Francisco, CA  94104-3484 |

**MEMORANDUM RE MOTION TO
DISMISS CHAPTER 11 CASE**